IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

BRIAN H. HARRISON,               :

    Petitioner,                  :

v.                               :    CIVIL ACTION NO. 05-00031-BH-B

GRANTT CULLIVER,                 :

    Respondent.                  :


**REPORT AND RECOMMENDATION**

Brian H. Harrison, a state prisoner currently in the custody of Respondent, has petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Petitioner challenges the validity of his 2002 conviction by a jury in the Circuit Court of Monroe County, Alabama, for discharging a firearm into an unoccupied automobile, for which he received a sentence of 25 years in the penitentiary. (Doc. 6 at 2; Doc. 15, Ex. A, Vol. 1 at 50-51, 53-54).

This matter is now before the undersigned Magistrate Judge on Petitioner's petition, Respondent's answer, motions, briefs, responses, and exhibits filed by the parties, the state court records, various appellate briefs filed by the parties, and opinions and orders of the state appellate courts. Following a careful review of the petition and record, the undersigned finds

that an evidentiary hearing is not warranted on the issues.[1]   See 28 U.S.C. § 2254(e)(2).

**FINDINGS OF FACT**

On January 8, 2001, following an argument, Petitioner Brian H. Harrison (hereinafter "Petitioner" or "Harrison") fired at least

---

[1]Because Petitioner filed his federal habeas petition after April 24, 1996, this case is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA).  "AEDPA expressly limits the extent to which hearings are permissible, not merely the extent to which they are required."  Kelley v. Secretary for Dep't of Corrs., 377 F.3d 1317, 1337 (11th Cir. 2004).  The legal standard for determining when an evidentiary hearing in a habeas corpus case is allowed is articulated in 28 U.S.C. § 2254(e)(2), which provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that–
>
> **(A)** the claim relies on–
>
> **(i)** a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> **(ii)** a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> **(B)** the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Petitioner has failed to establish that an evidentiary hearing is warranted in this case.

2

one gunshot into his girlfriend's automobile as she was attempting to pack her belongings and leave the house.[2] (Doc. 15, Ex. A, Transcript Record at 77-83, 116). The victim, Gena Mixon, claims that as she was in the process of loading her car, Petitioner retrieved his .22 rifle from his truck, and shot two times into her car, hitting the hood and the front bumper. (Id. at 80). Ms. Mixon testified at trial that she then ran into the house to attempt a phone call, but that Petitioner followed her inside and physically attacked her. (Id. at 81-82). Harrison denies that he fired his gun two times, contending that he only fired once accidentally. Eventually, Ms. Mixon was able to drive to a nearby post office, and call the police. (Id. at 81-83). A police report was made based upon the details provided by the victim, along with a survey of the condition of the subject automobile. (Id. at 117-122). As a result of this incident, Harrison was arrested on January 9, 2001. (Doc. 15, Ex. A, Vol. 1 at 79).

Harrison was indicted by the Monroe County Grand Jury on February 7, 2001, and charged with shooting or discharging a firearm into an unoccupied vehicle.[3] (Doc. 15, Ex. A, Vol. 1 at 1,

---

[2]A review of the record reveals that at the time of the incident, Harrison and the victim were living together in Harrison's grandmother's house. (Doc. 15, Ex. A, Transcript Record at 75-77).

[3]The indictment reads as follows: "The Grand Jury of said County charge that before the finding of this indictment, Brian Heath Harrison, whose name is to the Grand Jury otherwise unknown, did, unlawfully shoot or discharge a firearm, explosive

79).  On March 12, 2002, Harrison was convicted of this charge by a jury in the Circuit Court of Monroe County, Alabama, the Honorable Samuel H. Welch, Jr. presiding.  (<u>Id.</u> at 1-2, 39, 84).  Petitioner was represented at trial by attorney Laura R. Grantham.  (<u>Id.</u> at 8-9).  Following the jury's guilty verdict on March 12, 2002, Harrison was sentenced on April 3, 2002,  under the Habitual Felony Offender Act to 25 years imprisonment.[4]  (<u>Id.</u> at 84).

Harrison filed a Motion for a New Trial on April 26, 2002, and this motion was heard and denied by the trial court on July 24, 2002.  (<u>Id.</u> at 55-64, 85).  Next, Harrison gave notice of appeal to the Alabama Court of Criminal Appeals on August 19, 2002.  (<u>Id.</u> at 85).  Attorney Dewayne M. Beesley represented Harrison on appeal.  (<u>Id.</u> at 86).  On April 25, 2003, the Alabama Court of Criminal Appeals affirmed Harrison's conviction by published opinion.  (Doc. 14, Ex. D; <u>Harrison v. State</u>, 879 So. 2d 594 (Ala. Crim. App. 2003)).  Harrison's petition for a writ of certiorari was denied by the Alabama Supreme Court on October 10, 2003.  (Doc. 14, Exs. F

---

or other weapon which discharges a dangerous projectile, to-wit: a rifle, into an unoccupied dwelling, building, railroad locomotive, railroad car, aircraft, automobile, truck or watercraft, to-wit: an unoccupied vehicle, in violation of Section 13A-11-61 of the Code of Alabama, against the peace and dignity of the State of Alabama.  (Doc. 15, Ex. A, Vol. 1 at 1).

[4]Harrison's sentence was enhanced based upon two prior felony convictions in Monroe County, Alabama.  The two prior convictions were that of "Discharging a Gun Into an Occupied Building" on November 15, 1994.  (Doc. 15, Ex. A, Vol. 1 at 44).

and G).

On July 22, 2003, Harrison filed a petition for post-conviction relief, *pro se*, pursuant to Rule 32 of the Alabama Rules of Criminal Procedure. (Doc. 15, Ex. H at 4). On October 29, 2003, the trial court denied Harrison's Rule 32 petition, and Harrison filed an appeal to the Alabama Court of Criminal Appeals on December 4, 2003. (Id. at 52, 66). On May 21, 2004, the Alabama Court of Criminal Appeals affirmed, by memorandum opinion, the judgment of the trial court denying Harrison's Rule 32 petition for post-conviction relief. (Doc. 14, Ex. L). Harrison filed a petition for a writ of certiorari with the Alabama Supreme Court, which was denied and a certificate of judgment was issued on December 10, 2004. (Doc. 14, Exs. N and O).

On January 18, 2005, Harrison filed the initial petition for a writ of habeas corpus, setting forth nine claims in support of his request for habeas relief. (Doc. 1). Pursuant to this Court's Order of January 31, 2005, Harrison filed the current petition for a writ of habeas corpus on this Court's form. (Docs. 3 and 6). Although Harrison originally set out eleven claims in support of his request for habeas relief, Harrison voluntarily dismissed several of those claims on February 8, 2006, leaving a total of six claims as best determined by this Court. (Doc. 29). The Court will consider each of those claims in turn.

## DISCUSSION

### Part One: Claims 1, 2, 4, 5 and 6

A review of the record and pleadings in this action reveals that all except claim 3 of the remaining habeas claims appear to have been appropriately raised in the state courts, and denied on the merits.  The Court begins its analysis of Harrison's claims with the principle that federal habeas relief for state prisoners attacking their conviction is limited in scope:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody *in violation of the Constitution or laws or treaties of the United States*.

28 U.S.C. § 2254(a) (emphasis added).  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of a constitutional dimension." Smith v. Phillips, 455 U.S. 209, 221 (1982).  Questions of state law rarely have federal constitutional significance because "[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983).  Such questions are reviewed in federal habeas proceedings only to determine whether the alleged errors rendered "the entire trial fundamentally unfair."  Id. at 1055.

6

Because claims 1, 2, 4, 5 and 6  have been decided by the state courts on the merits, in order to obtain federal habeas relief on the basis of any of these claims, Harrison must show that the state courts resolved this claim in a manner contrary to or involving an unreasonable application of federal law as established by United States Supreme Court precedent.  28 U.S.C. § 2254(d) provides that:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id.  In Williams v. Taylor, 529 U.S. 362, 412 (2000), Justice O'Connor, writing for a majority of the Court, recognized that "§ 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court."

A state court decision is contrary to
the Supreme Court's clearly established
precedent (1) if the state court applies a
rule that contradicts the governing law as
set forth in Supreme Court case law, or (2)
if the state court confronts a set of facts
that are materially indistinguishable from
those in a decision of the Supreme Court and
nevertheless arrives at a result different
from Supreme Court precedent.  See Williams
v. Taylor, 529 U.S. 362, 120 S. Ct. 1495,
1519-20, 146 L. Ed. 2d 389 (2000).

A state court decision involves an
unreasonable application of Supreme Court
precedent "if the state court identifies the
correct governing legal rule from [Supreme
Court] cases but unreasonably applies it to
the facts of the particular state prisoner's
case." Williams, 120 S. Ct. at 1520.  In
addition, a state court decision involves an
unreasonable application of Supreme Court
precedent "if the state court either
unreasonably extends a legal principle from
[Supreme Court] precedent to a new context
where it should not apply or unreasonably
refuses to extend that principle to a new
context where it should apply." Id.

Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000).  Moreover,
as discussed above, the Act, as amended, presumes as correct all
determinations of factual issues made by a state court and places
the burden upon the petitioner to rebut such a presumption of
correctness by clear and convincing evidence.  28 U.S.C. § 2254(e).
For the reasons set forth below, the Court finds that Harrison is
not entitled to habeas relief on the basis of any of his federal
habeas claims.

I.  Claim 1 (Original Claim II).

Harrison argues first in his petition that he is entitled to

8

relief under § 2254 on the ground that he was denied equal protection of the law by the trial court when said court refused to grant a continuance so that Harrison could retain an expert witness to aid in his defense. (Doc. 6, Attachment at 7-9). According to Harrison, he requested a continuance so that he could employ a ballistics expert to inspect the alleged bullet holes in the subject car. Harrison contends that this expert would have testified that the second hole in the car, which was in the front bumper, was not caused by a .22 caliber bullet. (Id.).

Harrison raised this claim in the state court on direct appeal, and the Alabama Court of Criminal Appeals held as follows:

> The appellant also argues that the trial court erroneously denied his motion for a continuance. Specifically, he contends that the trial court should have granted the motion so he could employ a ballistics expert who allegedly would have supported his claim that the gun accidentally discharged.
>
> "'It is well settled that a motion for a continuance is addressed to the sound discretion of the trial court and that, absent a showing of abuse of that discretion, the trial court's decision on the matter will not be overturned on appeal. Arnold v. State, 601 So. 2d 145 (Ala. Cr. App. 1992); see generally cases cited at 14 Ala. Digest 2d § 586.
>
> "'To warrant a continuance on the ground that a witness is absent, it must be shown that the expected testimony of the witness is material and competent, that there is a probability that the

evidence will be forthcoming if the case is continued, and that the moving party exercised due diligence to secure the evidence. <u>Ex parte Saranthus</u>, 501 So. 2d 1256 (Ala. 1986).  <u>Material evidence means "[e]vidence which has an effective influence or bearing on questions in issue."</u>  <u>Black's Law Dictionary</u> 976 (6th ed. 1990). <u>"Simply put, a 'material' fact is one that would matter in the trial on the merits."</u>  <u>Sumner v. Sumner</u>, 664 So. 2d 718, 723 (La. App. 1995).  <u>It must be shown that substantially favorable testimony would be given by the witness and that the denial of a continuance would materially prejudice the defendant.</u>  <u>Whitehead v. State</u>, 429 So. 2d 641 (Ala. Cr. App. 1982). <u>In addition, it must be established that the expected testimony is not merely cumulative</u> or in the nature of impeachment, and the motion for a continuance must not be made merely for purposes of delay. <u>Mitchell v. Moore</u>, 406 So. 2d 347 (Ala. 1981); <u>Malone v. State</u>, 659 So. 2d 1006 (Ala. Cr. App. 1995); <u>McClellan v. State</u>, 628 So. 2d 1026 (Ala. Cr. App. 1993); <u>Prince v. State</u>, 623 So. 2d 355 (Ala. Cr. App. 1992).

"'The appellant made no showing as to what the witness's testimony would be if he were present and testified.  <u>The refusal to grant a continuance because a witness will be absent is not error if there is no showing of what the witness would testify to.</u>  <u>Smith v. State</u>, 368 So. 2d 298 (Ala. Cr. App. 1978), writ quashed, 368 So. 2d 305 (Ala. 1979); <u>Castona v. State</u>, 17 Ala. App. 421, 84 So. 871 (1920).  Thus, the appellant failed

to establish that the expected
testimony would be material and
competent, that it would be
substantially favorable to him,
that it would not be merely
cumulative or in the nature of
impeachment, or that the denial of
the continuance would be
prejudicial to him.'

"<u>Smith v. State</u>, 698 So. 2d 189,
205 (Ala. Crim. App. 1996), aff'd,
698 So. 2d 219 (Ala.), cert.
denied, 522 U.S. 957, 118 S. Ct.
385, 139 L. Ed. 2d 300 (1997)
(emphasis added)."

<u>Woodson v. State</u>, 794 So. 2d 1226, 1228 (Ala.
Crim. App. 2000).

In his motion for a continuance, the
appellant alleged only that he "intend[ed] to
employ a ballistics expert to testify in this
case." (C.R. 19.) However, he did not make
any showing as to what evidence the
ballistics expert would present or that such
evidence would be material to his case.
Also, he did not show that he had exercised
due diligence to obtain a ballistics expert.
Therefore, the trial court properly denied
the appellant's motion for a continuance.

(Doc. 14, Ex. D at 3-5).

Harrison argues that the Alabama Court of Criminal Appeals
erred in upholding the trial court's refusal of his request for a
continuance because pursuant to <u>Ex parte Saranthus</u>, 501 So. 2d 1256
(Ala. 1986), he only needed to show that the expected evidence was
material, that it would be forthcoming if the case was continued,
and that he had exercised due diligence to secure the evidence.
(Doc. 6 at 7). However, this Court agrees with the Alabama Court

11

of Criminal Appeals in their determination that, at the time of the request for the continuance, Harrison did not make any "showing as to what evidence the ballistics expert would present or that such evidence would be material to his case." (Doc. 14, Ex. D at 3-5). Further, this Court agrees with the Alabama Court of Criminal Appeals in their determination that Harrison did not show that "he had exercised due diligence to obtain a ballistics expert." (<u>Id.</u>).

As discussed above, in order to obtain federal habeas relief on the basis of claim 1, Harrison must show that the state courts resolved this claim in a manner contrary to or involving an unreasonable application of federal law as established by United States Supreme Court precedent. Harrison fails to cite to any United States Supreme Court precedent to support his claim in this matter. Respondent, however, points to <u>Ungar v. Sarafite</u>, 376 U.S. 575, 589 (1964), where the United States Supreme Court held the following:

> The matter of a continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is

12

denied.

Id. (internal citations excluded).

In Harrison's Motion to Continue, it was argued to the trial judge that Harrison's attorney had not had adequate time to investigate the allegations in the action, and that she "intend[ed] to employ a ballistics expert to testify in this case." (Doc. 15, Ex. A, Vol. 1 at 19).  This does not satisfy the requirements that Harrison show the Court that material evidence was forthcoming and that he had exercised due diligence.  For the precise reasons found by the Alabama Court of Criminal Appeals in its published opinion, this Court agrees that the trial court's denial of Harrison's request for a continuance was proper.  Thus, claim 1 fails to state a cognizable federal habeas claim and is due to be denied.

II. Claim 2 (Original Claim III).

Harrison next argues that he is entitled to relief under § 2254 on the ground that he was denied equal protection of the law because the state's indictment against him failed to allege the required element of mental culpability.  Again, Harrison has failed to cite to any United States Supreme Court decision to support his claim.

Harrison raised this claim in the state court on direct appeal, and the Alabama Court of Criminal Appeals denied this claim on the merits as follows:

> The appellant further argues that "the
> indictment does not state a required element

13

of mental culpability." (Appellant's brief
at p. 9.) The indictment alleged that the
appellant

>"did, unlawfully shoot or discharge
>a firearm, explosive or other
>weapon which discharges a dangerous
>projectile, to-wit: a rifle, into
>an unoccupied dwelling, building,
>railroad locomotive, railroad car,
>aircraft, automobile, truck or
>watercraft, to-wit: an unoccupied
>vehicle, in violation of Section
>13A-11-61 of the Code of Alabama,
>against the peace and dignity of
>the State of Alabama."

(C.R. 1.) In Sullens v. State, [Ms. CR-01-
0968, March 21, 2003] __ So. 2d __, __ (Ala.
Crim. App. 2003), we addressed a similar
contention as follows:

>"Section 13A-11-61, Ala. Code 1975,
>provides:

>"'(a) No person shall shoot or
>discharge a firearm, explosive or
>other weapon which discharges a
>dangerous projectile into any
>occupied or unoccupied dwelling or
>building or railroad locomotive or
>railroad car, aircraft, automobile,
>truck or watercraft in this state.

>"'(b) Any person who commits an act
>prohibited by subsection (a) with
>respect to an occupied dwelling or
>building or railroad locomotive or
>railroad car, aircraft, automobile,
>truck or watercraft shall be deemed
>guilty of a Class B felony as
>defined by the state criminal code,
>and upon conviction, shall be
>punished as prescribed by law.

>"'© Any person who commits any act
>prohibited by subsection (a) hereof
>with respect to an unoccupied

dwelling or building or railroad
locomotive or railroad car,
aircraft, automobile, truck or
watercraft shall be deemed guilty
of a Class C felony as defined by
the state criminal code, and upon
conviction, shall be punished as
prescribed by law.'

"The indictments track the language of §13A-
11-61(a), Ala. Code 1975.  However, that
statute does not include a specific culpable
mental state.  Therefore, we must determine
whether a violation of §13A-11-61, Ala. Code
1975, is a strict liability offense.

"Section 13A-2-4(b), Ala. Code
1975, provides:

"'Although no culpable mental state
is expressly designated in a
statute defining an offense, an
appropriate culpable mental state
may nevertheless be required for
the commission of that commission, or
with respect to some or all of the
material elements thereof, if the
proscribed conduct necessarily
involves such culpable mental
state.  A statute defining a crime,
unless clearly indicating a
legislative intent to impose strict
liability, states a crime of mental
culpability.'

"(Emphasis added.)  The Commentary to §13A-2-
4, Ala. Code 1975, states:

"'Subsection (b) explicitly states
a policy adverse to arbitrary use
of "strict liability" concepts.
An express statement is required in
the statute defining the offense if
strict liability is being imposed.'

"(Emphasis added.)  Although §13A-11-61, Ala.
Code 1975, does not describe a culpable
mental state, it also does not expressly

15

state that discharging a firearm into an
occupied vehicle is a strict liability
offense.  Furthermore, §13A-11-61, Ala. Code
1975, was enacted in 1984, and we presume
that the Legislature was aware of §13A-2-4,
Ala. Code 1975, and chose not to make the
offense a strict liability offense.  <u>See</u> <u>Ex</u>
<u>parte Phillips</u>, 771 So. 2d 1066 (Ala. 2000).
Therefore, we conclude that discharging a
firearm into an occupied vehicle is not a
strict liability offense.

    "We must next attempt to ascertain what
mental state is required to commit the
offense of discharging a firearm into an
occupied vehicle.  In this regard, §13A-2-2,
Ala. Code 1975, provides:

"'The following definitions apply to this
    Criminal Code:

    "'(1)   Intentionally.  A person
            acts intentionally with
            respect to a result or to
            conduct described by a statute
            defining an offense, when his
            purpose is to cause that
            result or to engage in that
            conduct.

    "'(2)   Knowingly.  A person acts
            knowingly with respect to
            conduct or to a circumstance
            described by a statute
            defining an offense when he is
            aware that his conduct is of
            that nature or that the
            circumstance exists.

    "'(3)   Recklessly.  A person acts
            recklessly with respect to a
            result or to a circumstance
            described by a statute
            defining an offense when he is
            aware of and consciously
            disregards a substantial and
            unjustifiable risk that the
            result will occur or that the

16

circumstance exists.  The risk
must be of such nature and
degree that disregard thereof
constitutes a gross deviation
from the standard of conduct
that a reasonable person would
observe in the situation.  A
person who creates a risk but
is unaware thereof solely by
reason of voluntary
intoxication, as defined in
subdivision (e)(2) of Section
13A-3-2, acts recklessly with
respect thereto.

"'(4)   Criminal negligence.  A
person acts with criminal
negligence with respect to a
result or to a circumstance
which is defined by statute as
an offense when he fails to
perceive a substantial and
unjustifiable risk that the
result will occur or that the
circumstance exists.  The risk
must be of such nature and
degree that the failure to
perceive it constitutes a
gross deviation from the
standard of care that a
reasonable person would
observe in the situation.  A
court or jury may consider
statutes or ordinances
regulating the defendant's
conduct as bearing upon the
question of criminal
negligence.'

"In Ex parte Edwards, 816 So. 2d 98
(Ala. 2001), the Alabama Supreme Court faced
the task of determining what mental state is
required to commit the offense of vehicular
homicide, as set forth in §32-5A-192, Ala.
Code 1975.  Section 32-5A-192(a), Ala. Code
1975, provides, in pertinent part:

"'Whoever shall unlawfully and

17

<u>unintentionally</u> cause the death of
another person while engaged in the
violation of any state law or
municipal ordinance applying to the
operation or use of a vehicle, or
vessel, as defined in Section 33-5-
3, or to the regulation of traffic
or boating, shall be guilty of
homicide when the violation is the
proximate cause of the death.'

"(Emphasis added.)  The supreme court
determined the following:

"'We conclude that the trial
court's initial reservations about
tying the requisite mental state to
the word "unlawfully" were sound.
We endorse the "Use Note on Mens
Rea Element" that accompanies the
Alabama pattern jury instruction
applicable to §32-5A-192; that note
states that "unintentional" is not
defined in the Code but that the
committee drafting the instruction
assumes that word to refer to all
forms of <u>mens rea</u> except that
described by the word
"intentional."  The Use Note then
refers to the previously referenced
defined terms governing <u>mens rea</u>
elements - - "intentionally,"
"knowingly," "recklessly," and
"criminal negligence."  (FN 11).
Then, the Use Note correctly concludes:

"'"The judge should
insert the appropriate
mens rea element
considering the
indictment and the
evidence before the
court.  'There are few,
if any, strict liability
offenses in this Criminal
Code....'  Ala. Code
§13A-2-3 Commentary.  <u>See
also</u> §13A-2-4(b)."

18

"'<u>Alabama Pattern Jury Instructions:
Criminal</u>, 14-4 to 14-6 (3d ed. 1994).

> FN11.  "'Because §32-5A-
> 192(b) uses the word
> "unintentionally," §13A-
> 2-2(1), defining
> "intentionally," has no
> field of application.'

> "<u>Edwards</u>, 816 So. 2d at
> 107.

"Unlike the vehicular homicide statute,
§13A-11-61, Ala. Code 1975, does not
expressly exclude intentional conduct.  In
fact, it does not exclude any of the states
of mental culpability set forth in §13A-2-2,
Ala. Code 1975.  As did the Alabama Supreme
Court in <u>Edwards</u>, we interpret the fact that
the statute does not specifically <u>exclude</u> any
states of mental culpability to be an
indication of the Legislature's intent to
<u>include</u> any of the states of mental
culpability set forth in §13A-2-2, Ala. Code
1975.  Therefore, we conclude that the
offense of discharging a firearm into an
occupied vehicle can be committed
intentionally, knowingly, recklessly, or with
criminal negligence.

"Finally, we must determine whether the
trial court erred when it denied the
appellants' motions to dismiss the
indictments based on the fact that they did
not allege a culpable mental state.  For the
reasons set forth below, we conclude that it
did not.

"In <u>Duncan v. State</u>, 624 So. 1084,
1087-88 (Ala. Crim. App. 1993), we addressed
a similar issue as follows:

> "'The appellant maintains that
> the indictment failed to charge an
> offense because it did not
> sufficiently inform her of what she
> was called upon to defend.  The

19

indictment in this case charged
that the appellant,

> "'"a parent, guardian or
> other person legally
> charged with the care or
> custody of Kassie Larene
> Duncan, a child less than
> eighteen (18) years of
> age, did fail to exercise
> reasonable diligence in
> the control of Kassie
> Larene Duncan so as to
> prevent Kassie Larene
> Duncan from becoming a
> dependent, as defined
> [in] Section 12-15-1 of
> the Code of Alabama, by
> such conduct more
> particularly described as
> knowingly leaving said
> child in an abusive
> environment ... in
> violation of Section 13A-
> 13-6 of the Code of
> Alabama.'  CR. 1-2.

"'Section 13A-13-6 provides, in
pertinent part:

"'"(a) [A] man or woman commits the
crime of endangering the welfare of
a child when:

> "'" ....

> "'"(2) [H]e or she, as a
> parent ... of a child
> less than 18 years of
> age, fails to exercise
> reasonable diligence in
> the control of such child
> to prevent him or her
> from becoming a
> 'dependent child' ... as
> defined in section 12-15-
> 1."

20

"'Section 12-15-1(10) provides that a "dependent child" is one

"'"a.  Who, for any reason, is destitute, homeless or dependent on the public for support; or

"'"b.  Who is without a parent or guardian able to provide for his support, training or education; or

"'"c.  Whose custody is the subject of controversy; or

"'"d.  Whose home, by reason of neglect, cruelty or depravity on the part of his parent, parents, guardian or other person in whose care he may be, is an unfit and improper place for him; or

"'"e.  Whose parent, parents, guardian or other custodian neglects or refuses, when able to do so or when such service is offered without charge, to provide or allow medical, surgical or other care necessary for such child's health or well-being; or

"'"f.  Who is in such condition or surroundings or is under such improper or insufficient guardianship or control as to endanger his morals, health or general welfare; or

"'"g.  Who has no proper parental care or guardianship; or

"'"h.  Whose parent, parents, guardian or custodian fails, refuse[s] or neglect[s] to send such child to school in accordance with the terms of the compulsory school attendance laws of this state; or

21

"'"i.  Who has been abandoned by
his parents, guardian or other
custodian; or

"'"j.  Who is physically, mentally
or emotionally abused by his
parents, guardian or other
custodian or who is without proper
parental care and control necessary
for his well-being because of the
faults or habits of his parents,
guardian or other custodian or
their neglect or refusal, when able
to do so, to provide them; or

"'"k.  Whose parents, guardian or
other custodian are unable to
discharge their responsibilities to
and for the child; or

"'"l.  Who has been placed for care
or adoption in violation of the
law; or

"'"m.  Who for any other cause is
in need of the care and protection
of the state; and

"'"n.  In any of the foregoing, is
in need of care or supervision."

"'The appellant claims that the
indictment was defective because the
allegation that she failed to prevent her
child from becoming a dependent, <u>by such
conduct more particularly described as
knowingly leaving said child in an abusive
environment</u>" did not specifically track any
of the fourteen alternatives found in
subsections (a) through (n) of §12-15-1(10),
defining a "dependent child."

"'The appellant is correct that the
phrase "knowingly leaving said child in an
abusive environment" is not in verbatim
correspondence with any one of the fourteen
alternatives of §12-15-1(10).  Instead, the
phrase appears to fit several of the

22

statutory subsections, especially parts (d),
(f), and (j).

"' The indictment, however, need not
have specified which of the §12-15-1
subsections was applicable in order to have
charged an offense.  Generally, it is
"sufficient to charge the elements of the
statutory offense in the words of the statute
[here, §13A-13-6], provided the statute
prescribe[s] with definiteness the
constituent elements of the offense."  Ex
parte Harper, 594 So. 2d 1181, 1183 (Ala.
1991).  The allegation that the appellant
"fail[ed] to exercise reasonable diligence in
the control of Kassie Larene Duncan so as to
prevent Kassie Larene Duncan from becoming a
dependent, as defined [in] Section 12-15-1 of
the Code of Alabama," tracked the language of
§13A-13-6, and was itself legally sufficient.


"' The fact that the indictment did not
specify which of the §12-15-1 alternatives
was applicable did not render it fatally
defective.  An indictment that tracks the
language of a statute that incorporates a
word or phrase "defined by law" in another
statute need not further clarify the
incorporated word or phrase.  See Inmon v.
State, 585 So. 2d 261, 263 (Ala. Cr. App.
1991). This indictment stated an offense
without alleging which of the §12-15-1
subsections was applicable, and the
appellant's motion to dismiss the indictment
was correctly denied.

"'While the appellant would have been,
on timely motion, entitled to a more definite
statement of the charge against her, she made
no such motion "prior to the entry of her
plea."  See Rule 13.2(e), A. R. Crim. P.
Compare Ex parte Harper, 594 So. 2d at 1183
n. 2 (wherein the Alabama Supreme Court
observed that "Rule 13.2(e), A. R. Crim. P.,
provided th[e] defendant, had he requested it
before joining issue on the indictment, the
right to move for a more definite statement

23

of the charge.  Had such a procedure been
available in Gayden [v. State, 262 Ala. 468,
80 So. 2d 501 (1955), ('a leading case on the
sufficiency of an indictment')], it appears
that the result reached there would have been
different").

"'The appellant in fact received a more
definite statement of the charge when the
trial court instructed the jury that it
should measure the appellant's conduct
against the definition of "dependent child"
contained in Ala. Code 1975, §12-15-1(10)(f):
a child "[w]ho is in such condition or
surroundings or is under such improper or
insufficient guardianship or control as to
endanger his morals, health or general
welfare." R. 428.  The appellant entered no
objection to this portion of the court's
charge.  Because subsection (f) conforms to
the evidence in this case, and because there
is absolutely no indication that the
appellant was misled in making her defense to
the indictment charging that she "knowingly
le[ft her] child in an abusive environment,"
we find that, even if any error had been
preserved, it would have been harmless.'

"Subsequently, in Hunt v. State, 642 So. 2d 999,
1022-26 (Ala. Crim. App. 1993), aff'd, 642 So. 2d 1060
(Ala. 1994), this court again addressed a similar issue
as follows:

"'Hunt maintains that the trial court
committed reversible error in failing to
sustain his motion to dismiss the indictment.
This issue is preserved for our review.  In a
supplement to his pretrial motion to dismiss,
Hunt alleged that the indictment was
"insufficient to charge a criminal offense in
that it fails to allege that Hunt knowingly
or willfully violated §36-25-5, Ala. Code
(1975), as required by §36-25-27, Ala. Code
(1975)." C.R. 485-486.  In addition, Hunt
filed a motion for more definite statement
pursuant to Rule 13.2(e), A. R. Cr. P. in
which this issue was presented.  C.R. 477,
481.  In response to this motion, the

24

Attorney General filed a lengthy written
response with extensive exhibits.  C.R. 543-
586.

"'Appellate courts review the legal
sufficiency of indictments de novo.  United
States v. Schmidt, 947 F.2d 362, 369 (9th
Cir. 1991).

"'"The Federal Rules of
Criminal Procedure require that an
indictment be a 'plain, concise,
and definite written statement of
the essential facts constituting
the offense charged.'  An
indictment need only contain those
facts and elements of the alleged
offense necessary to inform the
accused of the charge so that she
may prepare a defense and invoke
the Double Jeopardy Clause when
appropriate.  Courts will normally
find an indictment insufficient
only if it fails to state a
material element of the offense.

"'"In determining whether an
indictment sufficiently informs the
defendant of the offense, courts
give the indictment a common sense
construction and generally will
uphold an indictment even if it
contains a technical error or
omission.  Validity of the
indictment turns on whether it
conforms to minimum constitutional
standards, not whether the
indictment could be framed more
satisfactorily.  Although an
indictment that tracks the
statutory language defining an
offense is usually sufficient,
reliance on statutory language
alone will not cure a fatal defect
in an indictment.

"'".... The availability of a
bill of particulars will not cure

25

an indictment that omits an
essential element of the offense."

"'Daniel F. McInnis et al., Project, <u>Twenty-
Second Annual Review of Criminal Procedure:
United States Supreme Court and Courts of
Appeals 1991-1992</u>, 81 Geo. L.J. 853, 1076-
1081 (1993) (footnotes omitted).

    "'The indictment charged in pertinent
part that Hunt

    "'"while a public official or
employee, to wit: the Governor of
the State of Alabama, did use an
official position or office, to
wit: the Office of the Governor of
the State of Alabama, to obtain
direct personal financial gain, to
wit: two hundred thousand dollars
($200,000) in lawful currency
and/or coinage of the United States
of America and/or checks, a better
description of which is unknown to
the Grand Jury, for himself or his
family or any business with which
he or a member of his family is
associated, said use and gain not
being specifically authorized by
law in violation of Section 36-25-5
of the <u>Code of Alabama</u>, against the
peace and dignity of the State of
Alabama."   C.R. 26.

    "'The statute under which Hunt was
indicted, Ala. Code 1975, §36-25-5(a),
provides:

    "'"No public official or
employee shall use an official
position or office to obtain direct
personal financial gain for
himself, or his family, or any
business with which he or a member
of his family is associated unless
such use and gain are specifically
authorized by law."

"'Here, the indictment parroted the language of §36-25-5(a).  However, the penalty for this conduct is prescribed by §36-25-27(a)(1) which requires that the conduct be "knowingly or willfully" committed.  Section 36-25-27(a)(1) provides:

     "'"Any person subject to this chapter who <u>knowingly or willfully</u> violates any provisions of this chapter other than the requirements of financial and lobbying disclosure shall be found guilty of a felony and shall be fined not more than $10,000.00 or less than $2001.00, or shall be imprisoned for not more than 10 years but not less than two years or any combination thereof."  (Emphasis added).

"'It is undisputed, both at trial and on appeal, that "knowingly or willfully"is an element of the offense defined in §36-25-5(a).

"'....

"'In <u>[Ex parte] Harper</u>, [594 So. 2d 1181 (Ala. 1991)], the Alabama Supreme Court held that an indictment alleging that the defendant "unlawfully" distributed a controlled substance was not void for failing to allege that the distribution was "knowingly" done.  The Court recognized that knowledge was an element of the offense which should have been alleged in the indictment, but it held that the defendant had failed to raise a timely objection to that omission from the charge.  The Court decided that "[e]ven if [the defendant] had a valid objection to the statement of the charge, <u>and we find that he did not have a valid objection in this case</u>, he failed to raise an objection timely."  <u>Harper</u>, 594 So. 2d at 1194 (emphasis added).

"'The court apparently had two reasons

27

for determining that the defendant "did not
have a valid objection" to the Harper
indictment, despite the omission of the
knowledge allegation.  First, the court found
it "important," 594 So. 2d at 1182, that "the
procedure for preferring an indictment was
governed by the provisions of Temporary Rule
15.2 [now Rule 13.2, A. R. Cr. P.]."  Under
that rule, "[t]he indictment or information
shall be a plain, concise statement of the
facts in ordinary language sufficiently
definite to inform a defendant of common
understanding of the offense charged and with
that degree of certainty which will enable
the court, upon conviction, to pronounce
proper judgment."

"'"The general rule in
Alabama, even before the adoption
of Temporary Rule 15 (now Rule 13),
was that it was sufficient to
charge the elements of the
statutory offense in the words of
the statute, provided the statute
prescribed with definiteness the
constituent elements of the
offense.  Ex parte Allred, 393 So.
2d 1030 (Ala. 1980); see also,
cases collected at 12 Ala. Dig.,
Indictment and Information, Key No.
110(3).  The crucial question, of
course, is whether the indictment
sufficiently apprises the accused
with reasonable certainty of the
nature of the accusation made
against him so that he may prepare
his defense, that he may be
protected against a subsequent
prosecution for the same offense.
See Hochman v. State, 265 Ala. 1,
91 So. 2d 500 (1956), in which the
Court distinguished Gayden v.
State, 262 Ala. 468, 80 So. 2d 501
(1955), a leading case on the
sufficiency of an indictment, in
which a divided Court held that two
counts of an indictment against
Gayden were defective and subject

to a demurrer."

"'<u>Harper</u>, 594 So. 2d at 1183.  The Court further noted that it "has liberalized criminal pleading and has provided a method for defendants to obtain a more definite statement of the charges [pursuant to Rule 13.2, A. R. Cr. P.]."  <u>Harper</u>, 594 So. 2d at 1183.

"'Second, the court found that Temporary Rule 15.5(c)(2) [now Rule 13.5(c)(2)] provides for a "harmless error" review of a defective charging instrument.

"'"The Court of Criminal Appeals correctly held, in <u>Stewart [v. State</u>, 580 So. 2d 27 (Ala. Cr. App. 1990)], that if a statute requires that the offense be 'knowingly' committed, then the indictment should allege that it was so committed, and if an objection to the indictment is raised by the trial court or the defendant 'during the pendency of the proceeding,' the indictment is defective and would be subject to dismissal, unless otherwise provided for in Temporary Rule 15.5(c)(2) (now Rule 13.5(c)(2)), which states, in part, that '[n]o charge shall be deemed invalid, nor shall the trial, judgment, or other proceedings thereon be stayed, arrested, or in any manner affected, for any defect or imperfection in the charge which does not tend to prejudice the substantial rights of the defendant upon the merits.'

"'"....Even if he had a valid objection to the statement of the charge, <u>and we find that he did not have a valid objection in this case</u>, he failed to raise an objection timely.

29

"'"Based on the foregoing, we
are clear to the conclusion that
the defendant's constitutional
right 'to demand the nature and
cause of the accusation' (Art. 1,
§6, Const. of Ala. 1901) has been
fulfilled in this case.  The
indictment is not void for failing
to allege that the offense was
committed 'knowingly.'

"'"This opinion should not be
construed, however, as stating that
the State may not be required to
prove that the defendant knew of
the presence of a controlled
substance, ... [K]nowledge must be
proved in order to establish that
an offense was committed.....

"'"Based on the above, we hold
that the indictment was not void
for its failure to allege that the
distribution of the controlled
substance was 'knowingly' done.  We
further hold that the petitioner's
objection was untimely, because it
was not made 'during the pendency
of the proceeding.'" (Emphasis
added).

"'Harper, 594 So. 2d at 1194-95.

"'From the above discussion we
draw the following conclusions: 1)
Knowledge or willfulness is an
element of the offense defined in
Ala. Code 1975, §36-25-5.  2) Under
Davis, supra, knowledge or
willfulness should have been
alleged in the indictment.  3)
After the adoption of Rule 13, A.
R. Cr. P. and the opinion of the
Alabama Supreme Court in Harper,
the failure to allege criminal
intent in an indictment does not
necessarily render an indictment
void and in some cases does not

30

even render it objectionable even
in those cases where criminal
knowledge is necessary for the
proof of the crime charged.

"'Frankly, <u>Harper</u> raises many
more questions than it answers.
However, this Court is bound by the
decisions of the Alabama Supreme
Court.  Ala. Code 1975, §12-3-16.

"'We conclude that <u>Ex parte</u>
<u>Harper</u> ... controls the result in
this case.  Hunt was given a more
definite statement of the charges
against him, and the State
presented evidence from which the
factfinder could infer that Hunt
committed the offense knowingly and
wilfully.  Therefore, any
imperfection in the indictment did
not "tend to prejudice [Hunt's]
substantial rights upon the
merits."  Rule 13.5(c)(2), A. R.
Cr. P.'

"Finally, in <u>Ex parte Edwards</u>, 816 So.
2d 98, 109 (Ala. 2001), the Alabama Supreme
Court, addressing a conviction under the
vehicular homicide statute, stated: 'Edward's
indictment did not describe a necessary
culpable mental state, and the court refused
her request for an instruction on a culpable
mental state.'  As the appellants concede,
'<u>Edwards</u> stands for the proposition that the
trial court could have cured the indictment
in its instructions to the jury.'
(Appellants' brief at p. 26.)

"The indictments in this case
substantially followed the language of §13A-
11-61(a), Ala. Code 1975.  (FN 3).  In light
of Alabama's liberalized rules of pleading,
we conclude that the indictments sufficiently
apprised the appellants of the nature of the
charges against them so that they could
prepare their defenses.  Also, the appellants
could have requested more definite statements

31

of the charges against them, as did the
appellant in <u>Hunt</u>.  <u>See</u> <u>also</u> <u>Duncan</u>.
Further, as in <u>Duncan</u>, the appellants
received more definite statements when the
trial court instructed the jury that it must
determine whether the appellants acted
'without lawful justification.'  ®. 492,
502).  Finally, the record does not indicate
that the appellants were misled in preparing
their defenses to the indictments.  In fact,
from the record, it appears that they
thoroughly prepared and presented their
defenses - - defense of others and self-
defense - - to the charges.  Therefore, we
conclude that any imperfection in the
indictments did not tend to prejudice the
substantial rights of the appellants on the
merits.

> FN3.  "Unlike the indictment in <u>Ex
> parte Lewis</u>, 811 So. 2d 485 (Ala.
> 2001), which the appellants cite,
> the indictments in this case did
> not, by omitting the culpable
> mental state, permit the appellants
> to be convicted of a greater
> offense while charging them only
> with a lesser offense."

Similarly, because the indictment in this case
substantially followed the language of §13A-11-61(a),
Ala. Code 1975, we conclude that it sufficiently
apprised the appellant of the charge against him so he
could prepare a defense.  Also, the appellant could
have requested a more definite statement of the charge
against him.  <u>See</u> <u>Hunt</u>; <u>Duncan</u>.  Finally, the record
does not indicate that the appellant was misled in
preparing his defense.  In fact, it appears from the
record that the appellant thoroughly prepared and
presented his defense - - i.e., that the shooting was
accidental.  Therefore, we conclude that any
imperfection in the indictment did not tend to
prejudice the substantial rights of the appellant on
the merits.

(Doc. 14, Ex. D at 5-25).

Again, in order to obtain federal habeas relief on the basis

32

of claim 2, Harrison must show that the state courts resolved this claim in a manner contrary to or involving an unreasonable application of federal law as established by United States Supreme Court precedent.  The Court notes that Harrison fails to cite to any United States Supreme Court case to support his claim in this matter.  Moreover, for the precise reasons found by the Alabama Court of Criminal Appeals in its published opinion, this Court agrees Harrison's indictment was sufficient, and that Harrison's constitutional rights have not been violated.  Thus, claim 2 fails to state a cognizable federal habeas claim and is due to be denied.

III.   <u>Claim 4</u> (Original Claims VIII and IX).

In habeas claim 4, Harrison argues that he is entitled to relief under § 2254 on the ground that the appellate court erred in not remanding his case for a hearing to determine his 6th and 14th Amendment claims that his conviction was obtained through the use of false evidence and perjured testimony.  Harrison raised this claim in the state court in his Rule 32 petition.  The claim was denied by the trial court, and was subsequently denied by the Alabama Court of Criminal Appeals which affirmed the trial court's denial as follows:

> The trial court, in its order denying the petition, stated:
>
> > "Petitioner asserts six claims.  No claim asserted by the petitioner requires an evidentiary hearing.  The undersigned presided over the trial, has read the

transcript of the trial, and the
opinion of the Court of Criminal
Appeals affirming the conviction.

...

"The third, fourth, and fifth
claims are that the testimony of
the complaining witness was not
credible and essentially argues the
insufficiency of the evidence.  A
jury heard the case and decided
what the true facts were.
Petitioner alleges no new fact or
newly discovered evidence.  The
opinion of the expert given at the
Motion for New Trial is not newly
discovered evidence as it could
have been presented at trial.

...

Based on established case law, the trial
court may summarily dismiss a petition
without an evidentiary hearing, provided that
the court "'has personal knowledge of the
actual facts underlying the allegations on
the petition" and "so long as [the court]
states the reasons for the denial in a
written order.'" Black v. State, 794 So. 2d
1210, 1213 (Ala. Crim. App. 1999) quoting
Teasley v. State, 704 So. 2d 104 (Ala. Crim.
App. 1997).  After reviewing the appellant's
petition and the trial court's dismissal
order, we hold that the trial court
adequately addressed each claim in stating
its reasons for dismissing the petition.

(Doc. 14, Ex. L at 2-3).

Again, since Harrison's issue has been considered by the state

courts on the merits, in order to obtain federal habeas relief on

the basis of claim 4, he must show that the state courts resolved

this claim in a manner contrary to or involving an unreasonable

34

application of federal law as established by United States Supreme Court precedent.  As detailed above, 28 U.S.C. § 2254(d) provides that:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id.

The Court notes that Harrison cites the case of Alcorta v. Texas, 355 U.S. 28 (1957), to  support his claim in this matter. In Alcorta, the United States Supreme Court held that the defendant had a due process right to be free from the knowing use of perjured testimony.  Id.  However, the facts of the Alcorta case are notably distinguishable from those in the instant action.  In Alcorta, the appellant was sentenced to death following his conviction for the stabbing murder of his wife.  In his defense, Alcorta had claimed that he was under the influence of heat of passion when he

discovered his wife kissing a man named Castilleja, in Castilleja's car, which was parked outside of Alcorta's house at two a.m.  <u>Id.</u> at 28-29.  At trial, Castilleja denied having any kind of romantic relationship with Alcorta's wife.  <u>Id.</u> at 30.  Following the trial, however, Castilleja admitted that he lied at trial about his relationship with Alcorta's wife, and that he had actually had sexual relations with her on numerous occasions.  <u>Id.</u>  Furthermore, the prosecutor admitted that he was aware of the true nature of Castilleja's relationship with Alcorta's wife, but had advised Castilleja, who testified for the prosecution, against revealing the nature of the relationship unless he was specifically questioned about it.   The prosecutor knowingly chose not to reveal this information to Alcorta.  <u>Id.</u> at 30-31.  The United States Supreme Court held that

> [i]t cannot seriously be disputed that Castilleja's testimony, taken as a whole, gave the jury the false impression that his relationship with petitioner's wife was nothing more than that of casual friendship. This testimony was elicited by the prosecutor who knew of the illicit intercourse between Castilleja and petitioner's wife. Undoubtedly, Castilleja's testimony was seriously prejudicial to petitioner.  It tended squarely to refute his claim that he had adequate cause for a surge of 'sudden passion' in which he killed his wife.  If Castilleja's relationship with petitioner's wife had been truthfully portrayed to the jury, it would have, apart from impeaching his credibility, tended to corroborate petitioner's contention that he had found his wife embracing Castilleja.  If petitioner's defense had been accepted by the jury, as it

36

> might well have been if Castilleja had not
> been allowed to testify falsely, to the
> knowledge of the prosecutor, his offense
> would have been reduced to 'murder without
> malice' precluding the death penalty now
> imposed upon him.

Id. at 31-32.

Unlike the Alcorta case, in the present action, Harrison has failed to raise any allegations other than to attack the credibility of the victim, Gena Mixon. Harrison argues that Ms. Mixon committed perjury when she testified that two shots were fired at the vehicle. Harrison does not allege that Ms. Mixon has recanted her testimony, nor does he appear to allege that the state was actually aware that Ms. Mixon's testimony was untrue.[5]  In fact, in the official incident report prepared by the investigating authorities, it is reported that Ms. Mixon told them on the day of the incident that Harrison had filed two shots into the car. (Doc. 15, Ex. H at 42). The "evidence" on which Harrison seems to hang his hat is that *post trial*, a ballistics expert, hired by Harrison, offered his opinion that only one of the two subject holes in the vehicle was made from a gun. (Doc. 15, Ex. A, Vol. 1 at 55-61).  The Court further notes that even if there was only one shot fired into the car, Ms. Mixon's

---

[5]Harrison claims only that the state "knew or should have known from Mixon's testimony" that the evidence was inconsistent. (Doc. 6 at 25).  Harrison, in a subsequently filed pleading, alleged that production of the grand jury transcripts would be required to "determine whether the prosecutors knowingly used perjured testimony"; however, he has offered nothing to suggest that Mixon provided contradictory testimony before the grand jury.  (Doc. 22 at 6).

claim that two shots were fired does not "squarely refute" Harrison's claim that the shooting was accidental. Harrison has failed to show that the prosecution relied on perjured testimony or that the state courts' resolution of this issue constituted an objectively unreasonable application of United States Supreme Court precedent.

Moreover, for the precise reasons found by the Alabama Court of Criminal Appeals in its memorandum opinion, this Court agrees that Harrison has not suffered a constitutional violation regarding his claim that his conviction was based upon false evidence and perjured testimony. Thus, claim 4 fails to state a cognizable federal habeas claim and is due to be denied.

IV.   Claim 5 (Original Claim X).

In habeas claim 5, Harrison argues that he is entitled to relief under § 2254 on the ground that newly discovered evidence exists which requires that his conviction be vacated by the court because if the evidence had been known at the time of trial, the result would probably have been different as the evidence establishes that he is actually innocent of the crime for which he stands convicted. Once again, Harrison has failed to cite to any United States Supreme Court decision to support his claim.

Harrison raised this claim in the state court in his Rule 32 petition, which was denied by the trial court. The trial court's denial was subsequently affirmed by the Alabama Court of Criminal

Appeals. (Doc. 14). Harrison bases this claim on the report of his ballistics expert, who he retained after the jury verdict. At the hearing on his Motion for a New Trial, Harrison's expert offered his opinion that there was only one bullet hole in the car. (Doc. 15, Ex. A, Transcript Record at 247-252). When Harrison raised this claim in his Rule 32 Petition, the trial court noted that "[a] jury heard the case and decided what the true facts were. Harrison alleges no new fact or newly discovered evidence. The opinion of the expert given at the Motion for New Trial is not newly discovered evidence as it could have been presented at trial." (Doc. 15, Ex. H at 52).

Again, since Harrison's claim has been considered by the state courts on the merits, in order to obtain federal habeas relief on the basis of claim 5, Harrison must show that the state courts resolved this claim in a manner contrary to or involving an unreasonable application of federal law as established by United States Supreme Court precedent. Harrison has offered no United States Supreme Court law to support his claim, and thus has failed to meet this burden. Moreover, for the precise reasons found by the Alabama Court of Criminal Appeals in its memorandum opinion, this Court agrees that Harrison has not suffered a constitutional violation regarding his claim that newly discovered evidence requires his sentence to be vacated. Thus, claim 5 fails to state

a cognizable federal habeas claim and is due to be denied.[6]

## V.   Claim 6 (Original Claim XI).

In habeas claim 6, Harrison argues that he is entitled to relief under § 2254 on the ground that he was denied effective assistance of counsel at trial, specifically at the hearing on his Motion for a New Trial hearing.  Harrison has failed to cite to any United States Supreme Court decision to support his claim.

Harrison raised this claim in the state court in his Rule 32 petition.  This claim was denied by the trial court, and the denial was subsequently affirmed on appeal before the Alabama Court of Criminal Appeals. (Doc. 14).  Although somewhat unclear, Harrison appears to base his claim upon his contention that his counsel, Ms. Grantham, failed to raise his "Newly Discovered Evidence" claim at the hearing on his Motion for a New Trial.  (Doc. 6 at 30-31). However, as noted above, Harrison actually had no newly discovered evidence because the opinion of the ballistics expert could have been discovered prior to trial; thus, even if Ms. Grantham had made this specific argument, it would have been to no avail.  Notably, Ms. Grantham did produce the ballistics expert, who was obtained by Harrison, and who testified that there was only one gunshot hole in Ms. Mixon's automobile. (Doc. 15, Ex. A, Transcript Record at 247-252).  Ms. Grantham additionally attempted to elicit testimony from

---

[6]To the extent, if any, that Harrison is attempting to show his actual innocence in claim 5 to establish cause for a procedural default, this issue is addressed in claim 3.

a juror that this evidence would possibly have changed her decision regarding the guilt of Harrison, had she heard this testimony at trial. (Id. at 253-268). It is this Court's opinion that Harrison has offered no evidence that his counsel was inadequate in any way. Moreover, when Harrison raised this claim in his Rule 32 Petition, the trial court noted that "[t]he undersigned presided over the trial and is of the opinion that the counsel was not ineffective." (Doc. 15, Ex. H at 52). On appeal, the Alabama Court of Criminal Appeals affirmed this judgment.

Again, since Harrison's claim has been considered by the state courts on the merits, in order to obtain federal habeas relief on the basis of claim 6, Harrison must show that the state courts resolved this claim in a manner contrary to or involving an unreasonable application of federal law as established by United States Supreme Court precedent. Harrison has offered no United States Supreme Court law to support his claim, and thus has failed to meet this burden. Moreover, for the precise reasons found by the Alabama Court of Criminal Appeals in its memorandum opinion, this Court finds that Harrison has not suffered a constitutional violation regarding his claim of ineffective assistance of trial counsel. Thus, claim 6 fails to state a cognizable federal habeas claim and is due to be denied.

Part Two: Claim 3 (Original Claim V)

Section 2254(b)(1) provides that a prisoner in state custody shall not be granted a writ of habeas corpus unless the prisoner "has exhausted the remedies available in the courts of the State." "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).  A state prisoner's failure to present his claims to the state courts in the proper manner results in a procedural default of those claims.  Id., 526 U.S. at 848.

In addressing the proper manner in which a federal claim must be presented to the state court to prevent procedural default, the United States Supreme Court has stated:

> In Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 512, 30 L. Ed. 2d 438 (1971), we said that exhaustion of state remedies requires that petitioners "fairly presen[t]" federal claims to the state courts in order to give the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights" (some internal quotation marks omitted).  If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution.  If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

42

<u>Duncan v. Henry</u>, 513 U.S. 364, 365-66 (1995).  The exhaustion doctrine also requires that a petitioner "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan</u>, 526 U.S. at 845.  In Alabama, the established appellate review process includes an appeal to the Alabama Court of Criminal Appeals, an application for rehearing to the Alabama Court of Criminal Appeals, and an application for discretionary review by the Alabama Supreme Court.  See <u>Ala. R. App. P.</u> 4, 39, 40.

Where the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief unless either the cause and prejudice exception or the fundamental miscarriage of justice exception is established.  <u>Smith v. Jones</u>, 256 F.3d 1135, 1138 (11th Cir. 2001) (citing <u>O'Sullivan</u>, 526 U.S. at 848-49 and <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991)).  <u>See also</u> <u>Gates v. Zant</u>, 863 F.2d 1492, 1500 (11th Cir. 1989) ("[a] defendant who is procedurally barred from raising a federal constitutional claim in state court is also barred from raising the claim in a federal habeas petition unless he can show cause for and actual prejudice from making the default."); <u>Medina v. Singletary</u>, 59 F.3d 1095, 1107 (11th Cir. 1995) ("[i]f a state prisoner fails to raise a claim in state court, or attempts to raise a claim in an improper manner, and state procedural rules preclude the state courts from hearing the merits of the claim, then

43

the federal habeas court is also precluded from hearing its merits, absent a showing of cause and prejudice.").

"Cause" for a procedural default exists if "the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," or that the procedural default was the result of ineffective assistance of counsel. <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). To establish "prejudice," the petitioner additionally must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982) (emphasis in original). In the absence of a showing of cause and prejudice, the Court may yet consider a procedurally defaulted claim if a "fundamental miscarriage of justice" has "probably resulted in the conviction of one who is actually innocent." <u>Smith v. Murray</u>, 477 U.S. 527, 537-38 (1986).

In habeas claim 3, Harrison argues that he is entitled to relief under § 2254 on the ground that he was denied equal protection of the law because the trial court erred when it refused to charge the jury on the lesser-included offense of reckless endangerment. The threshold question here is whether Harrison fully and fairly presented his habeas claim to the Alabama courts by invoking one complete round of the State's established appellate

44

review process.   A thorough review of the record reveals that
Harrison did attempt to raise this claim on his direct appeal, but
the Alabama Court of Criminal Appeals denied relief after finding
that the issue had not been properly preserved for review:

> Next, the appellant argues that the
> trial court erroneously refused to instruct
> the jury on reckless endangerment.  During
> the charge conference, he requested such an
> instruction, and the trial court refused his
> request.  However, the appellant did not
> object to the trial court's refusal to give
> the requested instruction either at that time
> or after the trial court's oral charge.  In
> fact, after the trial court had completed its
> oral charge, the appellant stated that he was
> satisfied with the court's oral charge.
>
> > "No party may assign as error
> > the court's ... failing to give
> > [an] instruction ... unless the
> > party objects thereto before the
> > jury retires to consider its
> > verdict, stating the matter to
> > which he or she objects and the
> > grounds of the objection."
>
> Rule 21.3, Ala. R. Crim. P.  Because the
> appellant did not object to the trial court's
> refusal to give his requested instruction, he
> did not preserve this argument for our
> review.  <u>See</u> Rule 21.3, Ala. R. Crim. P.;
> <u>Bullock v. State</u>, 697 So. 2d 66 (Ala. Crim.
> App. 1997).

(Doc. 14, Ex. D).

The law is clear that, if a state prisoner raises his claims
in state court, but fails to raise them in an appropriate state
procedural manner and is denied relief on the basis of an
independent and adequate state procedural rule, he is barred from

federal habeas relief unless he can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law.  Coleman, 501 U.S. 722, 750 (1991) ("[i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.").  See also Gates, 863 F.2d at 1500; Medina, 59 F.3d at 1107.

In determining whether a state court has denied a prisoner's claim based on an independent and adequate state procedural rule, the Eleventh Circuit has established a three-part test.  "First, the last state court rendering a judgment in the case must clearly and expressly state that it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim."  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  "Secondly, the state court's decision must rest solidly on state law grounds, and may not be 'intertwined with an interpretation of federal law.'"  Id.  "Finally, the state procedural rule must be adequate; i.e., it must not be applied in an arbitrary or unprecedented fashion;" it must not "be 'manifestly unfair' in its treatment of the Harrison's federal constitutional claim," id.; and

46

it must be firmly established and regularly followed.  Cochran v. Herring, 43 F.3d 1404, 1408 (11th Cir. 1995) (citing Ford v. Georgia, 498 U.S. 411, 423-24 (1991)).

Based on the Court's review of Alabama Rule of Criminal Procedure Rule 21.3, as well as Bullock v. State, 697 So. 2d 66 (Ala. Crim. App. 1997), the Court is satisfied that the state procedural law was firmly established and regularly followed, and the procedural bar was fairly and non-arbitrarily applied. Therefore, Harrison's habeas claim 3 is defaulted in state court pursuant to an independent and adequate state procedural ground.

Since Harrison has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief unless either the cause and prejudice exception or the fundamental miscarriage of justice exception is established. Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001) (citing O'Sullivan, 526 U.S. at 848-49 and Coleman v. Thompson, 501 U.S. 722, 750 (1991)). See also Gates v. Zant, 863 F.2d 1492, 1500 (11th Cir. 1989) ("[a] defendant who is procedurally barred from raising a federal constitutional claim in state court is also barred from raising the claim in a federal habeas petition unless he can show cause for and actual prejudice from making the default."); Medina v. Singletary, 59 F.3d 1095, 1107 (11th Cir. 1995) ("[i]f a state prisoner fails to raise a claim in state court, or attempts to raise a claim in an improper manner, and state procedural rules

preclude the state courts from hearing the merits of the claim, then the federal habeas court is also precluded from hearing its merits, absent a showing of cause and prejudice.").

"Cause" for a procedural default exists if "the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," or that the procedural default was the result of ineffective assistance of counsel.  Murray v. Carrier, 477 U.S. 478, 488 (1986).  To establish "prejudice," the petitioner additionally must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982) (emphasis in original).  In the absence of a showing of cause and prejudice, the Court may yet consider a procedurally defaulted claim if a "fundamental miscarriage of justice" has "probably resulted in the conviction of one who is actually innocent." Smith v. Murray, 477 U.S. 527, 537-38 (1986).

Because Harrison's habeas claim 3 has been procedurally defaulted in state court, and is likewise procedurally defaulted in this Court, the Court turns to the question of whether Harrison has demonstrated cause for the default and actual prejudice as a result of the alleged violations of federal law or that failure to consider the claim will result in a fundamental miscarriage of justice.

48

Harrison offers only his opinion that he is actually innocent of the crime, without any evidence to bolster this claim.

Accordingly, Harrison has failed to establish cause for his procedural default of habeas claim 3 as that term is defined by law, and has failed to establish that a denial of review constitutes a fundamental miscarriage of justice. Therefore, review of Harrison's habeas claim 3 is barred in this Court, and that claim is due to be dismissed.

<u>CONCLUSION</u>

Based on the foregoing, the undersigned Magistrate Judge is of the opinion that Harrison's rights were not violated and that his request for habeas corpus relief should be denied. It is so recommended.

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this the **7th** day of **May, 2008.**

         **/s/SONJA F. BIVINS**
         **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1.   **Objection**.   Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.   See 28 U.S.C. § 636(b)(1)©; Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988).   The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.   The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.   The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.   It is insufficient to submit only a copy of the

50

original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. **Opposing party's response to the objection.** Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection. Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3. **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.